J-S29019-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A H. A/K/A A.D.H., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.H., MOTHER | : : : : : : : | No. 85 EDA 2018 |

Appeal from the Decree December 13, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-AP-0000910-2017,
CP-51-DP-0003127-2015, FID: 51-FN-002636-2015

BEFORE:   PANELLA, J., MURRAY, J., and STEVENS*, P.J.E.

MEMORANDUM BY MURRAY, J.:                    **FILED JUNE 13, 2018**

A.H. (Mother) appeals from the decree that involuntarily terminated her parental rights to her minor son, A.D.H. (Child), born in November 2008.[1] Additionally, Mother's counsel filed a petition to withdraw and brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).  After careful review, we grant counsel's petition to withdraw and affirm.

The Philadelphia Department of Human Services (DHS) opened a case file for Child in October 2015 due to substance abuse and housing concerns with Mother.  Trial Court Opinion, 1/19/18, at 1.  On January 13, 2016, the trial court adjudicated Child dependent and identified Child's permanency goal

---

[1] E.D.B. (Father) voluntarily relinquished his parental rights to Child and is not a party to this appeal.

---

*   Former Justice specially assigned to the Superior Court.

as reunification. Child was placed with, and continues to reside with, Maternal Aunt and Uncle. Mother was granted supervised vitiation with Child at the agency.

On September 15, 2017, DHS filed a petition to change Child's permanency goal from reunification to adoption and to involuntarily terminate Mother's parental rights to Child. On December 13, 2017, the trial court held a joint hearing on the petitions.[2] At the conclusion of the hearing, the trial court orally delivered its decree terminating Mother's parental rights to Child and changing Child's permanency goal to adoption. The trial court entered its decree that same day. Mother timely filed a notice of appeal on December 18, 2017, along with a concise statement of errors complained of on appeal. On February 15, 2018, Mother's counsel filed an **Anders** brief, in which counsel argued that Mother's appeal was frivolous and requested permission from this Court to withdraw as counsel.[3]

Before reaching the merits of Mother's appeal, we must first address counsel's petition to withdraw. **See Commonwealth v. Rojas**, 874 A.2d

---

[2] At the hearing, Child was represented by guardian *ad litem*, Andre Martino, Esquire, and by legal counsel, Daniel Silver, Esquire. Mr. Martino and Mr. Silver both advocated in favor of terminating Mother's parental rights.

[3] Counsel did not file a separate petition to withdraw, but rather set forth his withdrawal request in his **Anders** brief. While this is satisfactory, we note our preference that counsel file a separate petition to withdraw. **See Commonwealth v. Fischetti**, 669 A.2d 399, 400 (Pa. Super. 1995) ("Although we believe the more desirable practice would be to submit a separate withdrawal request to the court, we . . . treat counsel's [request] in the brief as such a request."); **see also Commonwealth v. Green**, 513 A.2d 1008, 1010 (Pa. Super. 1986).

638, 639 (Pa. Super. 2005) ("When faced with a purported *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.") (quoting *Commonwealth v. Smith*, 700 A.2d 1301, 1303 (Pa. Super. 1997)). This Court extended the *Anders* procedure to appeals from decrees involuntarily terminating parental rights in *In re V.E.*, 611 A.2d 1267 (Pa. Super. 1992). To withdraw pursuant to *Anders*, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citing *Commonwealth v. Lilley*, 978 A.2d 995, 997 (Pa. Super. 2009)). With respect to the third requirement of *Anders*, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, an *Anders* brief must comply with the following requirements:

> (1)   provide a summary of the procedural history and facts, with citations to the record;

> (2)   refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

In the instant matter, Mother's counsel filed a petition to withdraw, certifying that he reviewed the record and determined that Mother's appeal is frivolous. Counsel also filed a brief, which includes a summary of the history and facts of the case, potential issues that could be raised by Mother, and counsel's assessment of why those issues are frivolous, with citations to relevant legal authority. Counsel provided Mother with a copy of the brief and a letter advising her that she may obtain new counsel or raise additional issues *pro se*. Accordingly, counsel complied substantially with the requirements of *Anders* and *Santiago*. Therefore, we may proceed to review the issues outlined in the *Anders* brief. We must also "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

Counsel's *Anders* brief raises the following issues for our review.

1. Whether the trial court committed reversible error, when it involuntarily terminated Mother's parental rights and changed the goal from reunification to adoption where such determination was not supported by clear and convincing

- 4 -

evidence under the [A]doption [A]ct, 23 Pa.C.S.A. § 2511(a)(1), (2), (5) and (8)[?]

2. Whether the trial court committed reversible error when it involuntarily terminated Mother's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical and emotional needs of the child as required by the [A]doption [A]ct, 23 Pa.C.S.A. § 2511(b)[?]

3. Whether[ ] the trial court erred because the evidence was overwhelming and undisputed that Mother demonstrated a genuine interest and sincere, persistent, and unrelenting effort to maintain a parent-child relationship with her child[?]

***Anders*** Brief at 6 (unpaginated).

We review these claims mindful of our well-settled standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence

that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the trial court terminated Mother's parental rights pursuant to Section 2511(a)(1), (2), (5), (8) and (b). We need only agree with the court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Here, we analyze the court's decision to terminate under Section 2511(a)(1) and (b), which provides as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> > \* \* \*
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and

- 6 -

medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

As it relates to Section 2511(a)(1), we note the pertinent inquiry for our review:

To satisfy Section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. . . . Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

*In re D.J.S.*, 737 A.2d 283, 285 (Pa. Super. 1999) (quoting *In re Adoption of Charles E.D.M.*, 708 A.2d 88, 91 (Pa. 1998)) (internal citations omitted). Although the six months immediately preceding the filing of the petition are the most critical to the analysis, "the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision." *In re B., N.M.*, 856 A.2d 847 (Pa. Super. 2004). Additionally, to the extent that the trial court based its decision to terminate parental rights pursuant to subsection (a)(1), "the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated

subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S.A. § 2511(b). In *In re C.M.S.*, we explained, "[a] parent is required to exert a sincere and genuine effort to maintain a parent-child relationship; the parent must use all available resources to preserve the parental relationship and must exercise 'reasonable firmness' in resisting obstacles placed in the path of maintaining the parent-child relationship." 832 A.2d 457, 462 (Pa. Super. 2003).

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the trial court must then engage in three additional lines of inquiry: "(1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b)." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (quoting *In re Adoption of Charles E.D.M.*, 708 A.2d at 91).

In granting DHS's petition for involuntary termination, the trial court made the following determination:

> Under these specific facts and circumstances, this [c]ourt found clear and convincing evidence that Mother demonstrated a settled purpose of relinquishing parental claim to the Child and failed to perform any parental duties. The Child was removed from Mother's home approximately twenty months ago. Mother's refusal to parent since that time was demonstrated by her failure to comply with her single case plan objectives. Mother has never completed a drug a program and has not attended random drug screens [] as ordered by this [c]ourt. Most importantly, Mother has never attended parenting classes and has demonstrated an inability to properly parent the Child. According to the testimony of the [] social worker, Mother's visits with the Child w[ere]

- 8 -

suspended for a short period as a result of Mother's inappropriate behavior during visits. Mother's phone contact with the Child was also discontinued due to the inappropriate conversations Mother had with the Child about his body parts. Mother's actions demonstrate a need for parenting classes; however, Mother has never completed a parenting program. These minimal objectives would have demonstrated Mother's interest in caring for her child; however, Mother made little efforts to fulfill these objectives. Accordingly, this [c]ourt found termination of Mother's parental rights warranted pursuant to [Section] 2511(a)(1).

Trial Court Opinion, 1/19/18, at 6.

Mother argues that she has complied with the objectives put in place by DHS. Namely, Mother asserts that she completed her drug and alcohol objective and was consistent with her visits with Child. *Anders* Brief at 13. Moreover, Mother contends that "she is currently capable of providing her child with the essential parental care, control and subsistence necessary for [Child's] physical and mental wellbeing and that the conditions and causes that led to her incapacity were remedied within the time allotted by the Adoption Act." *Id.* at 15.

After careful review of the record, we find there is ample, competent evidence to support the trial court's factual findings, and the court's conclusions are not a result of an error of law or an abuse of discretion. Child was initially removed from Mother's care because of concerns regarding Mother's drug and alcohol use and housing. Dependency Petition – Statement of Facts, 12/2/15, at ¶ b. During the termination hearing, DHS presented the testimony of Tenicha Wright, the case manager assigned to Mother's case. Ms. Wright testified that DHS established the following objectives for Mother:

complete a Clinical Evaluation Unit (CEU) assessment and comply with any recommendations, complete random drug screens, attend outpatient treatment at Wedge and comply with any recommendations, attend Achieving Reunification Center (ARC) for parenting classes, and attend visits with Child. N.T., 12/13/17, at 23, 25, 28-29.

Contrary to Mother's claims, Mother's substance abuse issues persist. Ms. Wright testified that she has not received any documentation from Mother regarding her completion of drug and alcohol treatment. N.T., 12/13/17, at 25, 43. Although Mother completed a CEU assessment, Mother failed to follow through with the recommended outpatient treatment at Wedge. *Id.* at 25. Mother tested positive for cocaine and marijuana in a drug screen taken in December 2015, and failed to submit to any subsequent drug screens, despite the courts requests for her to do so. *Id.* at 24, 43. Moreover, Ms. Wright testified that Mother never attended any parenting classes and currently lacks appropriate housing. *Id.* at 26, 43-44.

With regard to visitation, Ms. Wright testified that Mother was consistent with her visits with Child, but expressed concern regarding the appropriateness of Mother's behavior at the visits. Specifically, Ms. Wright testified that during a visit, Mother attempted "to pull the child's pants down to view his butt hole. . . ." N.T., 12/13/17, at 31. As a result of Mother's behavior, visits were suspended, but were subsequently reinstated. *Id.* Likewise, Ms. Wright testified that Mother engaged in inappropriate behavior

during her phone contact with Child. *Id.* at 34. Ms. Wright indicated that Mother would attempt to talk to Child about his body parts. As a result of Mother's behavior during visits, Child required behavioral health services and underwent a psycho-sexual evaluation. *Id.* at 33-34.

Thus, the record confirms that Mother refused or failed to perform parental duties for the six months immediately preceding the filing of DHS's termination petition on September 15, 2017. The record establishes that due to Mother's inappropriate behavior, Mother's visits with Child were temporarily suspended and phone contact with Child was eliminated. N.T., 12/13/17, at 34. Although Mother made an effort to attend visits with Child, Mother failed to address the concerns expressed by the court, which ultimately led to Child's removal. Accordingly, we conclude that the trial court did not abuse its discretion by involuntarily terminating Mother's parental rights to Child pursuant to Section 2511(a)(1).

We next consider whether the trial court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(b).

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and citations omitted).

Here, the trial court concluded that DHS presented clear and convincing evidence that terminating Mother's parental rights would best serve Child's needs and welfare pursuant to Section 2511(b). Trial Court Opinion, 1/19/18, at 10. In particular, the trial court noted there was ample testimony presented to establish that Child is not bonded with Mother. *Id.* at 11. Likewise, the trial court noted that, at the time of the termination hearing, Child had been in care for over twenty months and Mother was nowhere closer to reunification than when Child first came into care in January 2016.

Our review of the record again supports the findings of the trial court. Mr. Wright testified that no parental-child bond exists between Mother and Child. N.T., 12/13/17, at 33, 46. Rather, Ms. Wright testified that Mother and Child have "more of a friend relationship." *Id.* at 33. Ms. Wright stated that Child has developed a bond with Maternal Aunt and Uncle, and that they desire to adopt him. *Id.* at 36. She noted that Child looks to Maternal Aunt and Uncle for security and comfort, and that they meet all of Child's physical

and emotional needs. *Id.* at 37-38. Moreover, Ms. Wright opined that, based on her observations, she did not believe terminating Mother's parental rights would be detrimental to Child. *Id.* at 40-41.

Although Mother's love for Child is not in question, along with her desire for the opportunity to parent Child, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *See In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). A child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *In re Z.S.W.*, 946 A.2d at 732. Rather, "a parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d at 856.

Accordingly, our independent review of Mother's claims demonstrates that they do not entitle her to relief. Moreover, our review of the record does not reveal any non-frivolous claims overlooked by counsel. *See Flowers*, 113 A.3d at 1250. We therefore grant counsel's petition to withdraw, and we affirm the decree.

Petition to withdraw granted. Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/13/18